THEOPHILUS C. DUNN, executor &c. of Anna K. Schmidt,. deceased,

*v.*

PHEBE E. CAMPBELL et al.

1. Where one of two executors qualifies and proceeds alone with the administration of the estate, and dies after he has expended in such administration more moneys than he has realized from the assets of the estate, and then the co-executor qualifies and continues the administration, it is the duty of the surviving co-executor, after paying the expenses of his administration, to reimburse the representatives of the deceased co-executor for his legitimate expenditures, in excess of his receipts, from the assets of the estate.

2. If the accounts of the deceased executor are fraudulent, it is the right of legatees and the duty of the surviving executor to attack them upon the ground of fraud.

3. The balance due to the deceased executor is not a debt of the testator which may be barred by decree under *Rev. p. 764 § 62*, but a part of the expense of the settlement of the estate.

4. If residuary legatees insist that the balance found to be due to a deceased executor, upon an accounting by his representatives in the orphans court, is the product of fraud, but fail to point out the fraud, and the surviving executor, after diligent inquiry, cannot discover the fraud, he may apply, by bill, for directions of this court as to the payment, making the residuary legatees and the representatives of the deceased executor parties to the suit.

5. Upon an allegation of fraud in the accounting of the representatives of a deceased co-executor by which a balance is found to be due to such deceased co-executor, the surviving co-executor cannot file a bill of interpleader and pay the moneys he has realized from the assets of the estate into court. He has an interest in the fund and a duty to perform with reference to it.

On bill and demurrer.

The bill alleges that Anna K. Schmidt died on the 30th day of August, 1880, leaving a will, of which she appointed Gustavus B. Sanford and Theophilus C. Dunn the executors. By this will, after giving her household furniture to her two daughters, Amelia and Dora, Mrs. Schmidt directed that the proceeds of a policy of insurance upon her life should be

Dunn *v.* Campbell.

divided so that $100 of it should be paid to one Mary Badger and $900 of it should be divided equally between her own four children, Amelia, Dora, Edward and Louis, and that the residue of her estate should be so divided that the two daughters should each have thirty-two per cent. of it, and the son Edward should have twenty-five per cent. of it, and the son Louis should have eleven per cent. of it.

The complainant renounced the executorship, and Sanford alone proved the will.

In April, 1882, Sanford's account was allowed by the orphans court of the county of Hudson.

In October, 1883, Sanford, being then a resident of New York city, died, intestate, and, afterwards, Phebe E. Campbell and Nathan A. Chedsey were appointed, in New York, as the administrators of his estate. On the 12th of November, 1883, the complainant qualified as executor of the will of Mrs. Schmidt. In April, 1884, the New York administrators of Sanford presented his final account to the Hudson county orphans court for allowance, and it was afterwards duly allowed by that court. That account exhibits that the estate of Mrs. Schmidt is indebted to the estate of Sanford in the sum of $2,630.58. This sum has not yet been paid. The complainant has not yet accounted, but he estimates that he has $1,630.08 in his hands, and he is desirous of paying that sum to those who may be entitled to it. He has obtained from the orphans court an order barring further claims by creditors of Mrs. Schmidt. Within the time limited for the presentation of such claims, the administrators of Sanford did not demand payment of the balance found to be due to his estate upon his and their aforesaid accounting. The complainant is " informed and believes that there are false, fraudulent and mistaken items " in the account filed by Sanford in his lifetime, and also in the account rendered by his administrators, amounting in the aggregate to the sum of $3,325, so that the estate of Sanford is indebted to the estate of Schmidt. The administrators and heirs of Sanford refuse to release their claim upon the estate of Schmidt, and in turn the legatees under the will of Schmidt for-

Dunn *v.* Campbell.

bid the complainant to pay it, or to pay the moneys in his hands to any one. The bill further alleges, that

"Your orator further shows, that he has no positive information, except by rumor, that said accounts of said Gustavus B. Sanford are fraudulent, false and erroneous."

It prays that the complainant may be allowed to pay the moneys in his hands into court, so that the defendants, who are the surviving legatees of Mrs. Schmidt, and the widow and infant child of one of those legatees, and also the administrators, heirs at law and next of kin of Sanford may interplead, and

"That the alleged fraud in the account of said Gustavus B. Sanford, deceased executor of said Anna K. Schmidt, may be inquired into for the benefit of the infant defendant as well as for all others concerned,"

and that the complainant, upon paying the money as aforesaid, may be discharged from all liability in the premises, and have his costs of this suit.

Phebe E. Campbell and Josephine E. Good, two heirs at law and next of kin of Sanford, demur to this bill for want of equity..·

*Mr. Raymond P. Wortendyke,* for the demurrants.

*Mr. Samuel A. Besson,* for the complainant.

THE CHANCELLOR.

The accounts rendered by Sanford and the administrators of his estate, appear by the bill to have been duly allowed by the orphans court. The decrees allowing them are conclusive against all persons interested in the estate, until they shall be attacked and set aside for fraud or mistake. *Rev. p. 775* § *108.* If there is fraud in the accounts, as the bill suggests, it is the right of the legatees and the duty of the complainant to institute proceedings to correct them. If such proceedings should be unsuccessful, the balance already found in favor of Sanford must be paid by the complainant from such assets of the estate of Mrs. Schmidt as

shall remain in his hands after the expenses of his administration of that estate shall be paid.  *3 Wms. Ex. 1861.*

The balance due to Sanford's estate is part of the expense of administering the estate of Mrs. Schmidt, and is not to be treated as a debt due to a creditor of the decedent, and it is not barred by the decree which the complainant obtained under *Rev. p. 764*. *§ 62,* against creditors of the decedent who had not presented their claims.

The bill does not present a case in which a bill of inter-pleader will lie. The complainant, as executor, is bound to claim an interest in the fund. He has not accounted, but he must do so. The expenses of his accounting and administration must be ascertained and paid. His commissions have not been paid. It is not possible yet to know the amount of the fund that he will have, either to pay to Sanford's administrators or to distribute to the residuary legatees of Mrs. Schmidt. He does not stand as a disinterested stakeholder.

The real position of the complainant is this: He does not know of any fraud in the Sanford accounts, but he fears that if he shall pay the balance exhibited by those accounts in Sanford's favor, the residuary legatees of Mrs. Schmidt will dispute the allowance of his claim for that payment when he accounts. It is impossible for him to show the fraud which is necessary to open Sanford's accounts. The residuary legatees say that there is fraud, but at the same time they refuse to disclose, or cannot disclose, what it is.

Under such circumstances, the complainant's obvious course is to inquire diligently for the fraud, and if he fails to find it, and, notwithstanding that fact, the residuary legatees persist in forbidding him to pay the balance due to the Sanford estate, he may apply, by bill, for the directions of this court as to the payment, making the residuary legatees and an administrator of Sanford, to be appointed in this state, parties to his bill. Such a bill is in the nature of a bill of interpleader, in that it brings defendants with adverse interests before the court, who, so far, at least, as the complainant is concerned, will be concluded by the court's action. But it is not a bill of interpleader, for the com-

plainant does not surrender the fund, but holds it and retains his property in it for the purposes of his trust. The heirs at law, next of kin and foreign administrators of Sanford would not be proper parties defendant. The foreign administrators cannot be sued in this state, and the next of kin and heirs at law do not represent the estate in this matter. The next of kin may have an administrator appointed here who can be sued in our courts. If they fail to do so, the complainant may apply to the ordinary to appoint an administrator *ad prosequendum.*

The demurrer to the present bill must be sustained, and the bill be dismissed.